EDWARD ALAN BOLICK v. SUNBIRD AIRLINES, INC. AND MOUNTAIN AIRLINES, INC.

No. 8921SC80

(Filed 5 December 1989)

1. **Aviation § 3.1 (NCI3d) — plane crash — exclusion of NTSB Factual Report — hearsay evidence inadmissible**

   In an action to recover for injuries sustained in a plane crash the trial court did not err in excluding from evidence the NTSB Factual Report, since the report contained statements by pilots, witnesses, and other non-officials who were not present to testify at trial, and the court properly exercised its discretion in excluding the hearsay portions of the report. N.C.G.S. § 8C-1, Rule 803(8)(c).

   **Am Jur 2d, Aviation § 145.**

2. **Aviation § 3.1 (NCI3d) — plane crash — pilot's alleged violation of F.A.A. regulation — no instruction on negligence per se required**

   In an action to recover for injuries sustained in a plane crash which occurred when the pilot missed the touchdown zone

BOLICK v. SUNBIRD AIRLINES, INC.

[96 N.C. App. 443 (1989)]

of the runway and did not execute a missed approach procedure, the trial court did not err in failing to instruct the jury on negligence *per se* for the flight crew's alleged violation of C.F.R. § 91.116(c), which provides that "no pilot may operate an aircraft . . . below the authorized [decision height] unless . . . that descent rate will allow touchdown to occur within the touchdown zone of the runway of intended landing," since a failure specifically to comply with the requirements of § 91.116 does not constitute negligence *per se* in light of § 91.2 which allows deviation from a regulation because the pilot in command has final authority over the aircraft, or when confronted with an emergency situation. N.C.G.S. § 63-20.

**Am Jur 2d, Aviation § 84.**

3. **Aviation § 3.1 (NCI3d) — plane crash — severe rainstorm prior to landing — instruction on sudden emergency proper**

In an action to recover for injuries sustained in a plane crash when a pilot overshot the runway and did not abort the landing, the trial court did not err in instructing the jury on the doctrine of sudden emergency where the evidence tended to show that the pilot was unaware of the severity of a rainstorm until just prior to landing and that moments before touchdown she faced a "wall of water."

**Am Jur 2d, Aviation § 108.**

Judge PHILLIPS dissents.

APPEAL by plaintiff from judgment entered 19 August 1988 by *Judge James A. Beaty, Jr.* in the FORSYTH County Superior Court. Heard in the Court of Appeals 11 July 1989.

This is a negligence action arising out of a 27 May 1984 plane crash at the Hickory Municipal Airport. Plaintiff was a passenger aboard Sunbird Flight 808 traveling from Charlotte to Hickory. The plane was a 10 seat Cessna 402C aircraft owned by defendants and piloted by defendants' employee, Captain Sherry Harper. En route from Charlotte to Hickory, Captain Harper encountered a rainstorm. Testimony at trial revealed that upon approaching the runway, they encountered a sudden worsening of the storm and that a "wall of water" confronted them just moments before touchdown. Captain Harper chose not to abort the landing and as a result touched down beyond the "touchdown zone" which is the first 3,000 feet of runway. The aircraft hydroplaned and ran off the end of the runway and down a forty foot embankment.

BOLICK v. SUNBIRD AIRLINES, INC.

[96 N.C. App. 443 (1989)]

Plaintiff sustained serious physical injury. At trial, the jury found that plaintiff's injury was not the result of defendant's negligence. Plaintiff appeals and we find no error.

*Smiley and Mineo, by Robert A. Mineo, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by William F. Womble, Jr., Donald F. Lively, and Mary J. Davis, for defendants-appellees.*

LEWIS, Judge.

Plaintiff brings forth three assignments of error. First, he contends that the lower court committed error in excluding from evidence the National Transportation Safety Board's (NTSB) Factual Report. Second, he contends that the court erred in not instructing the jury on negligence *per se* when evidence showed that the flight crew violated Federal Aviation Administration Regulations (FARs). Third, plaintiff alleges the court erred in instructing the jury on the doctrine of "sudden emergency."

[1] During the course of the trial below, plaintiff sought to admit the factual report or investigator's report section of the NTSB report. The judge denied introduction of the report itself but did allow "specific portions of it to be used as contain factual information obtained by Walter Stiner [NTSB investigator] himself based upon the factual documents from interviews of witnesses who have testified in open court or through their depositions to the extent certain documents from the NTSB report were used by them." Plaintiff contends that the entire factual report is admissible under 49 U.S.C. Section 1441(e) and Rule 803(8)(c) of the North Carolina Rules of Evidence.

49 U.S.C. Section 1441(e) governs the use at trial of NTSB reports and states:

> No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.

Federal cases which have looked at this provision have distinguished between the factual portion of the NTSB report and the portion which embraces a determination of probable cause, and have reached a consensus that Section 1441(e) only excludes that part of the

report which expresses the agency view as to probable cause. The factual portions are admissible. *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 816 (4th Cir. 1982); *American Airlines, Inc. v. United States*, 418 F.2d 180, 196 (5th Cir. 1969); *Berguido v. Eastern Air Lines, Inc.*, 317 F.2d 628, 631-32 (3rd Cir. 1963), *cert. denied*, 375 U.S. 895 (1963).

The fact that this evidence is not barred by Section 1441(e) is not conclusive of the question, however, because it does not consider the admissibility of the testimony under the rules of evidence. *Id.* G.S. 1B, Chap. 8C-1, Rule 803(8)(c) allows the admission of "records, reports, statements or data compilations . . . setting forth (c) in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law unless the sources of information or other circumstances indicate a lack of trustworthiness." However, any hearsay contained in the report must also fall under one of the hearsay exceptions. *See* G.S. 1B, Chap. 8C-1, Rule 805. In *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 636 (3rd Cir. 1977), the court upheld the trial court's exclusion of the NTSB report to the extent it consisted of statements of pilots or other witnesses because they equal inadmissible hearsay:

> To the extent that the NTSB reports offered by McShain consist of the statements of pilots or other witnesses regarding the accidents, they constitute inadmissible hearsay evidence. The Advisory Committee's Notes make clear that Federal Rule of Evidence 803(8) exempts from the hearsay rule only reports by officials; and of course, the pilots and other witnesses are not officials for this purpose. Moreover, the memoranda submitted to the government by its investigators often contained statements from witnesses which would make such memoranda encompass double hearsay.

*Accord, Colvin v. United States*, 479 F.2d 998 (9th Cir. 1973) (Rule 803(8) excluded statement of an eyewitness to a traffic accident contained in the accident report prepared under the Federal Tort Claims Act); *Ramrattan v. Burger King Corp.*, 656 F.Supp. 522, 529 (D.Md. 1987) (defendant's motion to exclude portions of police report referring to statements by bystanders granted because witnesses' statements were not "factual findings resulting from an investigation within the meaning of Rule 803(8).").

*State v. Acklin*, 317 N.C. 677, 346 S.E.2d 481 (1986) is distinguishable. In *Acklin*, the Supreme Court ruled that the trial court prejudicially erred in excluding SBI lab reports under Rule 803(8)(c). However, the State in that case did not contest the admissibility of the reports, but instead argued that any error committed by the trial court was not prejudicial. *Id.* at 682, 346 S.E.2d at 484. Furthermore, the SBI report was comprised of reports prepared by state officials who were present to testify at trial.

In this case the NTSB reports contained statements by pilots, witnesses and other non-officials who were not present to testify at trial. The trial court properly exercised its discretion in excluding the hearsay portions of the NTSB report. To the extent portions were admissible independent of the report, those portions were admitted. We find no error.

[2]   Plaintiff alleges Captain Harper failed to comply with 14 C.F.R. Section 91.116 which details the approach to be flown on an instrument flight landing and explains the missed approach procedures a pilot may execute in appropriate circumstances. 14 C.F.R. Section 91.116(c) provides:

> No pilot may operate an aircraft . . . below the authorized [decision height] unless . . . that descent rate will allow touchdown to occur within the touchdown zone of the runway of intended landing.

The touchdown zone is defined as the first 3,000 feet of the runway. Plaintiff claims Captain Harper's failure to land in the touchdown zone and her decision not to execute a missed approach constitutes negligence *per se* and assigns as error the failure of the trial court to instruct the jury on negligence *per se* for the flight crew's alleged violation of C.F.R. Section 91.116(c).

The FARs are administrative regulations established by the Federal Aviation Administration and have the force and effect of law; persons and operations to whom they apply must abide by them. 49 U.S.C. Section 1348 (1988). The North Carolina General Assembly has incorporated the FARs as applicable to intrastate flight by virtue of G.S. Section 63-20. Captain Harper and First Officer Van Hoy admitted that the FARs applied to the conduct of Sunbird flight 808.

The FARs constitute a general code of conduct that, by its terms, places discretion in the hands of the pilot in command of

BOLICK v. SUNBIRD AIRLINES, INC.

[96 N.C. App. 443 (1989)]

an aircraft. Part 91 of the FARs simply provides specific requirements applicable to the technical aviation field but vest final authority in the pilot in command. 14 C.F.R. Section 91.3, applicable to every regulation included in Part 91, specifically provides that the pilot in command is the final authority as to the operation of the aircraft and reserves to the pilot in command the authority to "deviate from any rule . . . to the extent required to meet an emergency." Thus, the FARs in Part 91 do not impose a specific duty on pilots in command from which no deviation is possible, but rather a general code of conduct subject to the final authority of the pilot.

Plaintiff's evidence that Captain Harper did not land the aircraft in the first third of the runway, the touchdown zone, and that she did not attempt a missed approach procedure, is some evidence of whether she met the standard of conduct required of her. A failure specifically to comply with either of those requirements of Section 91.116 does not constitute negligence *per se* in light of Section 91.3 which allows deviation from a regulation because the pilot in command has final authority over the aircraft, or when confronted with an emergency situation. We find that the trial court did not err in refusing to instruct the jury on the issue of negligence *per se.*

[3] Finally, plaintiff urges us to reverse on the ground that the trial court erred in instructing the jury on the doctrine of "sudden emergency." We find no error.

The doctrine of "sudden emergency" is only a convenient name for the means by which courts explain to the jury the effect certain external forces have on whether a duty of care has been breached. It is not a means of reducing the standard of care: "Sudden emergency is not a legal defense which may operate to bar an action; it is only one factor to consider in making the reasonable person determination." *Helms v. Church's Fried Chicken, Inc.,* 81 N.C. App. 427, 432, 344 S.E.2d 349, 352 (1986) (*citing* Restatement (Second) of Torts Section 296 (1965)).

It is the duty of the court to instruct the jury upon the law with regard to every substantial feature of the case. *Moseley & Moseley Builders, Inc. v. Landin, Ltd.,* 87 N.C. App. 438, 445, 361 S.E.2d 608, 612 (1987), *cert. dismissed,* 322 N.C. 607, 370 S.E.2d 416 (1988). The instructions must be based on evidence "which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the

BOLICK v. SUNBIRD AIRLINES, INC.

[96 N.C. App. 443 (1989)]

claim or defense asserted." *In Re Will of Cooley*, 66 N.C. App. 411, 417, 311 S.E.2d 613, 616 (1984); *Cockrell v. Cromartie Transport Co.*, 295 N.C. 444, 449, 245 S.E.2d 497, 500 (1978). The existence of an emergency situation during Captain Harper's approach is certainly a substantial feature of this case and an essential element of the defense. The evidence, in the light most favorable to the defense, supports the giving of an instruction on the sudden emergency doctrine.

Defendant produced testimony at trial that Captain Harper was unaware of the severity of the storm until just prior to landing and that moments before touchdown she faced a "wall of water." In *Lawing v. Landis*, 256 N.C. 677, 124 S.E.2d 877 (1962), the evidence disclosed that the highway on which defendant was travelling was suddenly enveloped in a dense fog. The defendant collided with plaintiff's vehicle in this fog. *Id.* at 679, 124 S.E.2d at 879. The court held that the occurrence of fog warranted an instruction on "sudden emergency." Like the defendant in *Lawing*, Captain Harper experienced the "unexpected operation of a material force," Restatement (Second) of Torts Section 296, Comment (a) (1965), which supported the trial court's instruction. *See also Mascuilli v. Tucker*, 82 N.C. App. 200, 207, 346 S.E.2d 305, 309 (1986) (evidence of sudden downpour or change in driving conditions is consistent with sudden emergency contemplated by the rule). Accordingly, we find no error.

No error.

Judge COZORT concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

I agree that under the circumstances it was not reversible error to refuse to admit into evidence the National Transportation Board Factual Report and that basis existed for charging on the sudden emergency doctrine. But in my opinion it was reversible error not to apply the theory of negligence *per se* to the pilot's violation of 49 C.F.R. Sec. 91.116 of the federal aviation regulations. Obeying the regulation, the purpose of which is to protect the lives of those who travel the airways, was not discretionary with

the pilot and that no criminal penalty is authorized for its breach is immaterial.