ROBIN WALDEN PINCKNEY, Plaintiff v. JOSEPH C. BAKER, Defendant/Third-Party Plaintiff v. KIMI ANN LUCES, Third-Party Defendant/Counter-Plaintiff

No. COA97-87

(Filed 1 September 1998)

**Motor Vehicles— sudden emergency—insufficient evidence**

In an action arising from an automobile-van collision, defendant van driver was not entitled to an instruction on sudden emergency where the alleged emergency was the action of the automobile driver pulling suddenly and unexpectedly in front of defendant's van, but defendant repeatedly testified that he did not see the automobile prior to the collision and that his attention was directed to it only upon impact; defendant's testimony showed that he never confronted an emergency situation compelling him to act instantly to avoid a collision or injury.

Appeal by plaintiff and third-party defendant/counter plaintiff from judgment entered 24 July 1996 by Judge W. Steven Allen in Guilford County Superior Court. Heard in the Court of Appeals 17 September 1997.

*Donaldson & Black, P.A., by Arthur J. Donaldson and Angela Bullard-Gram, for plaintiff-appellant.*

*Gregory A. Wendling for third-party defendant/counter plaintiff-appellant.*

*Teague, Rotenstreich & Stanaland, L.L.P., by Kenneth B. Rotenstreich and Ian J. Drake, for defendant/third-party plaintiff-appellee.*

JOHN, Judge.

Plaintiff Robin Walden Pinckney (Pinckney) and third-party defendant/counter plaintiff Kimi Ann Luces (Luces) appeal the trial court's judgment dismissing the claims of each against defendant/third party plaintiff Joseph Cline Baker (Baker). Pinckney and Luces maintain the court committed reversible error, *inter alia,* by instructing the jury on the doctrine of sudden emergency. We find merit in this contention and award a new trial.

Relevant factual and procedural information includes the following: On 21 February 1995, Pinckney was a passenger in an automobile

operated by Luces on West Market Street in Greensboro. At relevant points herein, West Market Street is a four-lane thoroughfare, with an additional left-turn lane in each direction. Luces was traveling east on West Market Street in the outer right-hand lane towards the intersection of Guilford College Road. As she approached the intersection, Luces noticed all vehicles were merging left in obedience to traffic warning cones blocking both easterly through lanes of West Market Street and directing all east-bound traffic into the center left-turn lane. Baker, operating a van, likewise was traveling in an easterly direction on West Market Street, approaching the intersection with Guilford College Road, and negotiated entry into the left-turn lane prior to the intersection. Luces and Pinckney received medical treatment following the subsequent collision which is the subject of the instant appeal.

The remaining testimony was in dispute. Pinckney testified that as Luces' vehicle approached the intersection, Baker had come to a stop in the left-turn lane in compliance with a red signal on the traffic light. Luces also stopped, rolled down her window, looked back at Baker and waved to him, thereby requesting permission to continue merging into the space between his van and the automobile preceding him. When the traffic light signaled green, Luces lifted her foot from the brake and began moving forward. Baker's van then collided with the rear left side of Luces' vehicle and continued to move forward, sideswiping the entire left side. The impact pushed Luces' automobile back into the left through lane, violently shaking the occupants.

The testimony of Luces was similar. She stated she came to a complete stop when she heard an engine revving behind her. Confused as to what the driver, later identified as Baker, intended to do, she rolled down her window and motioned at him to wait and allow her to merge into the left-turn lane. According to Luces, Baker nodded his head, "as an okay to tell [me] it's all right to continue." When the traffic signal turned green, Luces removed her foot from the brake and her vehicle rolled forward slightly. Baker's van then "rammed" her automobile.

On the other hand, Baker testified he never ceased moving towards the intersection, although at a speed of no more than five to ten miles per hour and while watching the traffic cones and vehicles in front of him. Baker denied seeing Luces stop or motion to him prior to impact, stated he did not see her automobile until

after impact, and maintained he braked as soon as the two vehicles made contact.

Other than the parties, Jerry Motley (Motley), a long-time employee of defendant, was the only direct witness called to testify. Motley was proceeding east on Market Street two vehicles behind defendant's van. Motley stated he and defendant moved into the left turn lane, and that Luces unsuccessfully sought to do likewise in front of the automobile traveling between Baker and Motley. Thereafter, Luces increased her speed and attempted to merge in front of Baker. However, due to his location, Motley was unable to see either Luces or the collision as it occurred.

Pinckney instituted suit against Baker 24 May 1995, alleging in pertinent part that he had negligently caused the 21 February 1995 collision by driving into the side of the automobile in which she was a passenger, failing to reduce his speed in order to avoid a collision, failing to keep a proper lookout and failing to keep his vehicle under proper control.

Baker filed answer 28 June 1995, denying he had been negligent and averring that Luces had negligently caused the collision. In addition, Baker pleaded as affirmative defenses the doctrines of sudden emergency, insulating negligence, the peculiar susceptibility of Pinckney, and failure to mitigate damages. Baker thereafter filed a third-party complaint against Luces alleging negligence and seeking contribution, indemnity, and property damage of $1,000.00. In her 20 November 1995 response to Baker's claims, Luces denied negligence and alleged sudden emergency, unavoidable accident and contributory negligence as affirmative defenses. Luces also counterclaimed for personal injuries and property damage. In the reply thereto, Baker reiterated his earlier denial of negligence.

Trial commenced 8 July 1996 and continued for two and one-half days. Over the objection of Pinckney and Luces, the trial court included an instruction on the doctrine of sudden emergency within its charge on the issues of Baker's negligence. On 16 July 1996 and 24 July 1996, judgment was entered upon the jury verdict, denying the claims of each party.

Luces and Pinckney first contend the trial court committed reversible error by instructing the jury on the doctrine of sudden emergency. The doctrine applies when "one is confronted with an emergency situation which compels him or her to act instantly

PINCKNEY v. BAKER

[130 N.C. App. 670 (1998)]

to avoid a collision or injury." *Colvin v. Badgett,* 120 N.C. App. 810, 812, 463 S.E.2d 778, 780 (1995), *aff'd,* 343 N.C. 300, 469 S.E.2d 553 (1996).

Regarding the doctrine of sudden emergency, "substantial evidence," *Banks v. McGee,* 124 N.C. App. 32, 34, 475 S.E.2d 733, 734 (1996), viewed in the light most favorable to the proponent, *Bolick v. Sunbird Airlines, Inc.,* 96 N.C. App. 443, 448-49, 386 S.E.2d 76, 79 (1989), *disc. review denied,* 326 N.C. 363, 389 S.E.2d 811, *aff'd,* 327 N.C. 464, 396 S.E.2d 323 (1990), supporting an instruction thereon must be presented, that is, " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *McGee,* 124 N.C. App. at 34, 475 S.E.2d at 734. Pinckney and Luces argue Baker failed to meet this burden. We are compelled to agree.

Pinckney and Luces in essence contend that the doctrine of sudden emergency rests upon the fundamental premise that the party asserting the doctrine must have been subjectively aware of the emergency and acted in response thereto. In light of Baker's testimony that he did not see Luces' vehicle until impact, the argument continues, Baker was not entitled to the instruction.

Baker accurately responds that this Court has held two conditions must be met in order for the sudden emergency doctrine to apply: (1) "an emergency situation must exist requiring immediate action to avoid injury . . . ," and (2) "the emergency must not have been created by the negligence of the party seeking the protection of the doctrine." *Allen v. Efird III,* 123 N.C. App. 701, 703, 474 S.E.2d 141, 142-143 (1996), *disc. review denied,* 345 N.C. 639, 483 S.E.2d 702 (1997) (citations omitted). Baker interprets such language to mean that an instruction on sudden emergency is proper if there existed an unanticipated event not created by the negligence of the requesting party, without regard to whether or not that party was aware of the emergency. Baker's reasoning is unpersuasive.

Under the doctrine of sudden emergency, the jury is permitted to consider, in its determination of whether specific conduct was reasonable under the circumstances, that the actor faced an emergency. *Giles v. Smith,* 112 N.C. App. 508, 511, 435 S.E.2d 832, 834 (1993). It logically follows that in order for perception of an emergency to have affected the reasonableness of the actor's conduct, the latter must have perceived the emergency circumstance and reacted to it. *See, e.g., Masciulli v. Tucker,* 82 N.C. App. 200, 205-06, 346 S.E.2d 305, 308 (1986) (" '[o]ne who is required to act in an emergency is not held by

the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated would have been' ") (citing *Ingle v. Cassady*, 208 N.C. 497, 499, 181 S.E. 562, 563 (1935)).

We note our Supreme Court has upheld a trial court's refusal to instruct on sudden emergency in an instance when, *inter alia*, the "evidence demonstrate[d] that to the very end [defendant] did not himself perceive any 'emergency.' " *Hairston v. Alexander Tank and Equipment Co.*, 310 N.C. 227, 241, 311 S.E.2d 559, 569 (1984). Commentators on North Carolina tort law agree. *See* Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts*, § 16.40.4, at 141-42 (1991) ("[t]he sudden emergency rule relates *only* to conduct after the emergency has been observed" (emphasis added)).

According to Baker, the alleged emergency circumstance in the case *sub judice* was the action of Luces in pulling suddenly and unexpectedly in front of Baker's van. However, Baker repeatedly testified he did not see Luces' vehicle prior to the collision, and that his attention was directed to it only upon impact. This testimony was insufficient to sustain submission of an instruction on sudden emergency in that Baker was never "confronted an emergency situation compell[ing] him to act instantly to avoid a collision or injury." *Colvin*, 120 N.C. App. at 812, 463 S.E.2d at 780. In other words, the sole indication in the record is that Baker was unaware of the alleged emergency until the actual collision. Accordingly, his conduct could in nowise have been in response to his "confrontation," *see id.*, with that emergency.

Because Baker failed to present substantial evidence supporting a jury instruction on the doctrine of sudden emergency, the trial court erred by instructing the jury thereon. Pinckney and Luces are entitled to a new trial. *See Giles*, 112 N.C. App. at 512, 435 S.E.2d at 834 ("[w]hen a trial judge instructs the jury on an issue not raised by the evidence, a new trial is required").

We decline to discuss the remaining errors asserted by Pinckney and Luces as unlikely to recur upon retrial.

New trial.

Judges GREENE and TIMMONS-GOODSON concur.